IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSE CASTANEDA,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN OF MCCOOK, PETER BERG, Director, United States Immigration and Customs Enforcement St. Paul Field Office; DAVID VENTURELLA, Acting Director, United States Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; DONALD J. TRUMP, President of the United States, in their official capacities,<br><br>Respondents. | Case No. 26 CV 3170<br><br>**AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

1. Jose Castaneda is a longtime resident of the United States currently detained by Immigration and Customs Enforcement (ICE) without any opportunity to contest his detention through a bond hearing. Mr. Castaneda was detained by ICE following a random stop and arrest in Fremont, NE. Despite no criminal history and his significant ties to the United States, Mr. Castaneda has been denied any individualized hearing to determine whether his continued detention is necessary.

2. Mr. Castaneda has no criminal history, yet he remains in immigration detention, unable to present evidence that he is neither a flight risk nor a danger to the community.

3. Mr. Castaneda seeks habeas relief under 28 U.S.C. § 2241 because the denial of any bond hearing violates his constitutional rights under the Fifth Amendment's Due Process Clause. The Supreme Court has long recognized that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects." *Zadvydas v. Davis*, 533 U.S. 690 (2001). The Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id* at 693.

4. As the Western District of Texas recently held in *Brizuela v. Noem*, "even in circumstances lacking a prior detention, release, and re-detention, noncitizens already in the country who have 'established a life here—albeit without authorization,' possess 'a strong liberty interest in their freedom from detention.'" *Brizuela v. Noem*, No. 3:26-cv-00048-DB (W.D. Tex. Mar. 7, 2026) (quoting *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025)). That court further explained that this is "consistent with the longstanding principle that due process applies to those who are present in the interior of the United States, regardless of their citizenship status." *Id.*

5. Although the Eighth Circuit recently held in *Avila v. Bondi* that noncitizens who entered without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), that decision addressed only the statutory question—not the constitutional one. As the *Brizuela* court recognized, circuit court decisions on the statutory question "do not preclude constitutional claims." *Brizuela v. Noem*, No.

3:26-cv-00048-DB (W.D. Tex. Mar. 7, 2026). Mr. Castaneda's as-applied constitutional challenge therefore remains viable.

6. Mr. Castaneda respectfully requests that this Court: (1) issue a Writ of Habeas Corpus ordering his immediate release; or, in the alternative, (2) order Respondents to provide him a bond hearing at which the Government bears the burden of proving, by clear and convincing evidence, that Mr. Castaneda is a flight risk or a danger to the community; or (3) order Respondents to show cause within three days why this Petition should not be granted.

## CUSTODY

7. Petitioner Jose Castaneda is in the physical custody of Respondents. He is under the direct control of Respondents and their agents. Mr. Castaneda is currently detained at McCook Detention Center.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 1331.

9. Venue is proper in this District under 28 U.S.C. § 1391 and 28 U.S.C. § 2242 because Mr. Castaneda is confined in this District, at least one Respondent is in this District, Mr. Castaneda's immediate physical custodian is in this District, and a substantial part of the events giving rise to the claims in this action occurred in this District. The Supreme Court has confirmed that "[f]or core habeas petitions, jurisdiction lies in only one district: the district of confinement." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025) (per curiam).

## HABEAS CORPUS

10. A petitioner is entitled to habeas relief if he demonstrates that his detention violates the United States Constitution or federal law. 28 U.S.C. § 2241.

11. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 20 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

12. The Court has inherent power to release the petitioner pending review of his petition. *See Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986).

## PARTIES

13. Petitioner Jose Castaneda is a citizen of El Salvador, he has resided in the United States for more than 12 years.

14. *Respondent Warden of McCook is the warden over the McCook ICE detention facility. He is the physical and legal custodian of the Petitioner and is named in his official capacity.*

15. Respondent Peter Berg is the Director of the ICE St. Paul Field Office. He is a legal custodian of Castaneda and is named in his official capacity.

16. Respondent David Venturella is the Acting Director of ICE. He is a legal custodian of Castaneda and is named in his official capacity.

17. Respondent Markwayne Mullin is the Secretary of the United States Department of Homeland Security (DHS). He is a legal custodian of Castaneda and is named in his official capacity.

18. Respondent Todd Blanche is the Attorney General of the United States Department of Justice. He is a legal custodian of Castaneda and is named in her official capacity.

19. Respondent Donald J. Trump is the President of the United States. He is a legal custodian of Castaneda and is named in his official capacity.

## FACTUAL ALLEGATIONS

### A. Background

20. Mr. Castaneda is a citizen of El Salvador who entered the United States 13 years ago. He has resided in the Omaha, NE area for most of that time. He has no prior criminal history.

21. Mr. Castaneda has family in the United States who depend on him. He is married and has a seven or eight year old daughter who is a US citizen.

### B. Detention and Bond Hearing

22. Mr. Castaneda was detained following a traffic stop by Nebraska State Patrol for an unidentified reason on May 18, 2026. There was no reasonable suspicion or probable cause for the stop.

23. When a noncitizen is detained under Section 1226(a), DHS makes the initial custody determination, but the detainee can request reconsideration by an IJ.

Here, DHS initially detained Mr. Castaneda without bond. Mr. Castaneda has since requested a bond redetermination hearing in front of an IJ.

24. Mr. Castaneda has evidence which supports the claims in this petition regarding his strong ties to the community. There is also no evidence that DHS can present which shows he is a flight risk or danger to the community.

25. Mr. Castaneda remains in DHS custody without the opportunity for release.

## LEGAL FRAMEWORK

I. THE EIGHTH CIRCUIT'S STATUTORY HOLDING IN *AVILA V. BONDI* DOES NOT FORECLOSE MR. CASTANEDA'S CONSTITUTIONAL CLAIMS

26. The Eighth Circuit recently addressed the statutory question of which detention provision applies to noncitizens who entered without inspection. In *Avila v. Bondi*, the court held that the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) "applies to aliens in the nation's interior as well as at the border." *Joaquin Avila v. Pamela Bondi*, et al, No. 25-3248 (8th Cir. Mar 25, 2026).

27. Critically, however, the Eighth Circuit's decision addressed only the statutory question. The court expressly did not address specific Due Process Clause requirements or constitutional limits on the duration of mandatory detention without a bond hearing.

28. As the Western District of Texas recently recognized in *Brizuela v. Noem*, circuit court decisions on the statutory framework (such as *Buenrostro-Mendez v. Bondi* in the Fifth Circuit) "preclude statutory claims premised on 8 U.S.C. §

1225(b) but do not preclude constitutional claims." *Brizuela v. Noem*, No. 3:26-cv-00048-DB (W.D. Tex. Mar. 7, 2026).

29. Similarly, the Supreme Court in *Jennings v. Rodriguez* addressed only statutory interpretation, holding that "read most naturally, §§1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded" and that "nothing in the statutory text imposes a limit on the length of detention, and neither provision says anything about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281 (2018). But the Court remanded the case for the lower courts to consider the respondents' constitutional challenges. *Id*.

30. Accordingly, Mr. Castaneda's as-applied constitutional challenge remains viable notwithstanding the statutory holdings in *Avila* and *Jennings*.

## II. MR. CASTANEDA'S DETENTION WITHOUT A BOND HEARING VIOLATES THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE

Even assuming the government's statutory interpretation is correct, Mr. Castaneda's detention without a bond hearing violates the Due Process Clause as applied to him.

### A. The Due Process Clause Applies to Mr. Castaneda

31. The Due Process Clause provides heightened protection against government interference with certain fundamental rights—and freedom from detention lies at the heart of the Due Process Clause's protections. Detention by the government violates due process in civil proceedings *unless* "a special justification . . . outweigh[s] the individual's constitutionally protected interest in

avoiding physical restraint.” *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, (2001).

32. The Supreme Court has unequivocally held that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 690 (2001). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.* at 693.

33. The Fifth Amendment's Due Process Clause "forbids the Government to 'deprive' any 'person . . . of . . . liberty . . . without due process of law.'" *Zadvydas v. Davis*, 533 U.S. 690 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.*

34. The Supreme Court has further recognized "that the Fifth Amendment entitles aliens to due process of law" in removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993); accord *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam).

35. As the Brizuela court explained, "noncitizens already in the country who have 'established a life here—albeit without authorization, possess 'a strong liberty interest in their freedom from detention.'" *Brizuela v. Noem*, No. 3:26-cv-00048-DB (W.D. Tex. Mar. 7, 2026) (quoting *Martinez v. Noem*, 2025 WL 2965859, at *4). This is "consistent with the longstanding principle that due process applies to those who

are present in the interior of the United States, regardless of their citizenship status." *Id*.

**B. Procedural Due Process**

36. The application of 8 U.S.C. §1225 to the Petitioner is an unconstitutional denial of due process.

37. Due process also requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976). Castaneda will not receive a meaningful opportunity for a bond hearing if the IJ continues to follow the *Yajure* decision and finds no jurisdiction to hold a bond hearing.

38. To determine whether government conduct violates procedural due process, the Court weighs three factors: (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures. *Id*. at 335.

***Private Interest***

39. Castaneda private interest is the right to be free from government detention. This interest is of the highest constitutional import.

40. Castaneda's conditions of detention further tip this factor in his favor. *See Günaydın v. Trump*, __ F. Supp. 3d __, File No. 25-CV-01151 (JMB/DLM), 2025

WL 1459154, at *7 (D. Minn. May 21, 2025). He is in custody away from his family, including his partner, child, and elderly mother.

41. Despite being in custody for a civil offense, he is detained with and subject to the same rules as those incarcerated for criminal offenses.

42. Castaneda cannot move freely, eat the food that he wants, sleep in his own bed, or spend time with his loved ones. He has very little privacy. His next immigration hearing date is April 22, 2026, with a final hearing most likely months away.

43. The private interest here is fundamental: freedom from detention. It weighs heavily in the weighing of the *Mathews* factors.

***Risk of Erroneous Deprivation***

44. Similarly, the risk of erroneous deprivation of Castaneda's liberty is substantial. Any decision by this IJ to not hold a bond hearing is not based upon any circuit case holding, statute, or regulation, but rather the agency's newfound interpretation of the INA.

45. The Government's ability to detain noncitizen during removal proceedings is found in the Immigration and Nationality Act, Title 8 U.S.C. §1221 et seq.:

a. Discretionary Detention, 8 U.S.C. § 1226(a) generally allows for the detention of noncitizens who are in regular, non-expedited removal proceedings, and permits those noncitizens who are not subject to

mandatory detention to be released on bond or on their own recognizance;

b. Mandatory Detention of "Criminal" Noncitizens. 8 U.S.C. § 1226(c) generally requires the mandatory detention of noncitizens who are removable because of certain criminal or terrorist-related activity after they have been released from criminal incarceration.

c. Mandatory Detention of "Applicants for Admission." 8 U.S.C. § 1225(b) generally requires detention for certain noncitizen applicants for admission, such as those noncitizens arriving in the U.S. at a port of entry or other noncitizens who have not been admitted or paroled into the U.S. and are apprehended soon after crossing the border.

d. Detention Following Completion of Removal Proceedings. 8 U.S.C. § 1231(a) generally requires the detention of certain noncitizens who are subject to a final removal order during the 90-day period after the completion of removal proceedings and permits the detention of certain noncitizens beyond that period. Id. at § 1231(a)(2),(6).

46. Mr. Castaneda's case concerns the detention provisions at §§ 1226(a) and 1225(b). Both detention provisions, §§ 1226(a) and 1225(b), were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025)

47. Following enactment of the IIRIRA, the Executive Office for Immigration Review drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225(b) and that they were instead detained under § 1226(a) after an arrest warrant was issued by the Attorney General. See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

48. For nearly thirty years, ICE and EOIR practice was that most noncitizens apprehended in the interior of the United States after they had been living in the U.S. for more than two years (as opposed to "arriving" at a point of entry, border crossing, or being apprehended near the border and soon after entering without inspection) received a bond hearing. If determined to not be a danger to the community or a flight risk and, as a result, granted a change in custody status, the individuals were released from detention either on their own recognizance or after paying the bond amount set by the IJ in full. 8 U.S.C. § 1226(a)(2)(A).

49. Recently, ICE has—without warning nor any publicly-stated rationale—reversed course and adopted a policy of attempting to treat all individual noncitizens that were not previously admitted to the U.S. that are contacted in the interior of the U.S. at any time after their entry as "arriving" and ineligible for bond regardless of

the particularities of their case. Following ICE's policy change, the BIA issued its *Yajure* decision on September 5, 2025.

50. The plain meaning of terms used in §§1225 and 1226 contradict DHS and DOJ's interpretation of the statute. 8 U.S.C. §1225(b)(2)(A) applies to noncitizens who are applicants for admission, defined as a an alien "seeking admission." Seeking admission "by its own force implies a coming from outside." *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929).

51. The two statutes of §1225 and §1226 are distinguished in that §1225 principally governs the detention of noncitizens seeking admission into the country, whereas §1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings…" *Jennings* at 838.

52. DHS and DOJ's reading would also make large portions of §1226 superfluous. Congress recently amended §1226 with the Laken Riley Act (LRA). That act requires detention of noncitizens charged with certain crimes *and* who entered the United States without inspection. If DHS and DOJ are correct, then there would have been no point in Congress passing the LRA.

53. Most District Courts analyzing this issue have found the Government's interpretation of §1225 to be incorrect. *See Aguilar Maldonado v. Olson*, No. 25-CV-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero*, 2025 WL 2403827, at *9; *see also, e.g.*, *Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Vazsquez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *Rosado v. Figueroa*, No. CV-25-02157 PHX DLR (CDB), 2025

WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis*, 25 Civ. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025). *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025).

***Government Interest***

54. The government's interest here carries little weight in comparison. There is no discernable harm with either releasing Petitioner Castaneda nor at the very least ordering the IJ to hold a bond redetermination hearing.

**FIRST CAUSE OF ACTION**

**Violation of Fourth Amendment Right against unreasonable search and seizure.**

55. Castaneda realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

56. The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. This protection extends to citizens and noncitizens alike. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (noncitizens "receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country").

57. Absent an administrative or judicial warrant, a "seizure of a person must be supported by probable cause particularized with respect to that

person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

58. Absent probable cause, immigration officers "must have reasonable suspicion" to stop individuals and question them "about their citizenship and immigration status . . . [and] any further detention . . . must be based on . . . probable cause." *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82, 884 (1975)("[T]he Fourth Amendment . . . forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens.").

59. Other District Courts have found that "ICE's immigration enforcement actions have raised serious concerns about the reliability of criminal charges lodged against noncitizens. Such actions compel the Court to closely scrutinize, and reject where appropriate, potential detention practices that rest on "dubious allegations." *Juan C.R.R. v. Bondi*, Civil 26-01282 (MJD/DJF) (D. Minn. Mar 17, 2026). See Also *J.B.C.O. v. Attorney Gen.,* 26-1429 (JRT/JFD), 26-639 (JRT/DTS), 26-778 (JRT/LIB) (D. Minn. Mar 06, 2026) (ICE arrested several noncitizens after a warrantless entry into their home); *Francisco S. v. Attorney Gen.*, 26-cv-1455 (ECT/DTS) (D. Minn. Feb 20, 2026) (Noncitizen released after ICE initiated an investigatory stop with no other articulable facts).

60. The Petitioner would also cite to *Hussen, et al. v. Noem*, et al. 0:26-CV-324 (Dist. Minn. 2026). In *Hussen*, the District Court denied a motion for

preliminary injunction on standing grounds while still finding ICE engaged in widespread Constitutional violations during Operation Metro Surge. This included a pattern of randomly stopping individuals solely on the basis of their race. 0:26-CV-324 Doc. 191, p. 75-95.

61. The Government's arrest of Castaneda was not supported by probable cause or reasonable suspicion. Castaneda was arrested simply for being present in Fremont, NE when NSP stopped him and held him for immigration authorities.

## SECOND CAUSE OF ACTION

### Violation of Fifth Amendment – Substantive Due Process

62. Castaneda realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

63. The U.S. Constitution establishes the right to due process for all persons within the United States, including noncitizens, whether their presence here is lawful or unlawful.

64. Substantive due process asks whether a person's life, liberty, or property is deprived without sufficient purpose. There is no question that Castaneda has been deprived of his liberty.

65. The government's continued detention of Castaneda is not supported by any special interest or compelling justification that outweighs his liberty interest. The IJ's refusal to hold a bond redetermination hearing violates his substantive due process rights.

## THIRD CAUSE OF ACTION

### Violation of Fifth Amendment – Procedural Due Process

66. Castaneda realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

67. Due process requires the opportunity to be heard at meaningful time and in a meaningful manner. Castaneda has not received that opportunity here.

68. Castaneda's liberty interest and the risk of erroneous deprivation far outweigh the government's interest in continued detention. The IJ's refusal to hold a bond redetermination hearing violates Castaneda's procedural due process rights.

## FOURTH CAUSE OF ACTION

### Violation of the Administrative Procedures Act

69. The IJ's decision violates the Administrative Procedures Act, specifically that the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; was contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; and without observance of procedure required by law. 5 U.S.C. §706(2)(A)-(D).

70. Castaneda incorporates his previous arguments and paragraphs.

## PRAYER FOR RELIEF

Petitioner Jose Castaneda respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order the immediate release of Petitioner pending these proceedings, pursuant the Court's inherent power;

(3) If Petitioner is not immediately released, order Respondents not to transfer Petitioner out of this District during the pendency of these proceedings, to preserve jurisdiction;

(4) Declare that Petitioner's detention violates the Fifth Amendment;

(5) Declare that Petitioner's detention violates the Administrative Procedures Act;

(6) Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody, or, in the alternative, order Respondents to show cause why this Petition should not be granted within three days, or in the alternative, to order Respondents to give Petitioner a bond redetermination hearing;

(7) Award Petitioner reasonable attorneys' fees and costs; and

(8) Grant any further relief the Court deems just and proper.

Dated this 10th Day of June 2026.

/s/ Christopher J. Roth
Christopher J. Roth
Roth Weinstein, LLC
713 S. 16th St.
Omaha, NE 68102
Office: (402) 346-0720
Fax: (402) 615-6223
Roth@RothWeinstein.com