IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSE CASTANEDA, | | |
| Petitioner, | | **4:26CV3170** |
| vs. | | |
| | | **MEMORANDUM AND ORDER** |
| WARDEN OF MCCOOK, in their official capacity; PETER BERG, Director, United States Immigration and Customs Enforcement St. Paul Field Office, in their official capacity; DAVID VENTURELLA, Acting Director, United States Immigration and Customs Enforcement, in their official capacity; MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in their official capacity; TODD BLANCHE, Attorney General of the United States, in their official capacity; and DONALD J. TRUMP, President of the United States, in their official capacity; | | |
| Respondents. | | |

This matter is before the Court on Petitioner Jose Castaneda's amended petition for a writ of habeas corpus (Filing No. 9). Castaneda, a noncitizen in removal proceedings, is detained by U.S. Immigrations and Customs Enforcement. He alleges his detention is unlawful because he has not received a bond hearing. For the reasons set forth below, his petition will be denied.

## BACKGROUND

Castaneda is a Salvadoran citizen. (Filing No. 9 at 4). He entered the United States thirteen years ago, settling in Omaha, Nebraska "for most of that time." (Filing No. 9 at 5).

Castaneda was detained by U.S. Immigration and Customs Enforcement (ICE) following a traffic stop in May 2026. (Filing No. 9 at 5). He says there "was no reasonable suspicion or probable cause for the stop." (Filing No. 9 at 5). After he was detained, Castaneda requested a bond redetermination hearing before an immigration judge. (Filing No. 9 at 5). He does not say whether the immigration judge held a hearing—just that he "remains in [U.S. Department of Homeland Security] custody without the opportunity for release." (Filing No. 9 at 6).

Castaneda now seeks a writ of habeas corpus from this Court. (Filing No. 9). He alleges his detention without a bond hearing violates his constitutional rights under the Fourth Amendment, Fifth Amendment, and the Administrative Procedure Act. (Filing No. 9 at 7-17). He seeks, among other relief, immediate release or in the alternative, an order directing Respondents to give him a bond hearing. (Filing No. 9 at 18).[1]

### STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Castaneda bears the burden to show that he is in custody in violation of the law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

---

[1] Castaneda's original petition named the Warden of the McCook Detention Center in the caption but did not make any allegations against him in the body of the petition. (Filing No. 1). Since the Warden is Castaneda's "immediate physical custodian," *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004), merely listing the Warden in the caption may not have been enough to vest this Court with jurisdiction. *See id.* at 442; *Krych v. Hvass*, 83 Fed. Appx 854 (8th Cir. 2003). To cure any jurisdictional defects, the Court directed Castaneda to file an amended petition including allegations against the Warden in the body of the petition. (Filing No. 8). Castaneda did so. (Filing No. 9 at 4).

**DISCUSSION**

28 U.S.C. § 2243 provides that the Court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." Here, the face of Castaneda's petition shows he is not entitled to habeas relief. For the reasons stated below, then, the Court will deny his petition without requiring the Respondents to show cause.

Castaneda's petition raises a threshold question: whether he is entitled to a bond hearing or release on constitutional grounds. As in previous cases raising these issues post-*Avila*, the Court answers it in the negative. *See Aleman Duenas v. Blanche et al.,* 2026 WL 1261633 (D. Neb. May 8, 2026); *Gonzalez-Martinez, v. Blanche et al*., 2026 WL 1045701 (D. Neb. Apr. 17, 2026); *Boubacar v. Blanche et al.,* 2026 WL 972708 (D. Neb. Apr. 10, 2026).

The Eighth Circuit's decision in *Avila* forecloses any statutory argument Castaneda may have had, as he acknowledges. (Filing No. 9 at 6). That case "concern[ed] the scope of the Government's power to detain aliens under 8 U.S.C. § 1225." *Avila v. Bondi*, 170 F.4th 1128, 1132 (8th Cir. 2026). Section 1225(a)(1) specifies that the statute applies to an alien who is an "applicant for admission." By definition, "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." § 1225(a)(1). "Being 'admitted' does not merely mean being present in the United States; under immigration law, it signifies having made a lawful entry into the country." *Avila,* 170 F.4th at 1133 (citing 8 U.S.C. § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.").

A different part of the statute "describes the Government's power to detain" applicants for admission. *Id.* "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for [removal proceedings]." § 1225(b)(2)(A) (emphases added). Unlike "applicant for admission," the phrase "seeking admission" is left undefined in the statute. *See id.* "Thus, taking § 1225(a)(1) and (b)(2)(A) together, the central inquiry is whether an alien who is an "applicant for admission" is also "seeking admission" under § 1225(b)(2)(A)." *Avila,* 170 F.4th at 1133. If they are, "then, generally, any 'alien present in the

3

United States who has not been admitted'"—like Castaneda here—"shall be detained." *Id.* (quoting § 1225(a)(1), (b)(2)(A)).

The Eighth Circuit held that the terms are equivalent. It "agree[d] with the Fifth Circuit that the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same." *Id.* (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026)). So while a noncitizen remains an "applicant for admission" so long as they are "present in the United States [and] has not been admitted," they are also "presently seeking admission" during this time, regardless of whether they take "any further affirmative steps to gain admittance." *Id.*

*Avila* settles the issue of whether § 1225 applies to Castaneda. It does. His petition, though factually sparse, shows he is an "applicant for admission" as that term is defined by statute: "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). When ICE encountered him during the traffic stop, he was an "alien present in the United States." *Id.;* (Filing No. 9 at 6, 7). And he "ha[d] not been admitted" because there is no suggestion he "lawful[ly] ent[ered] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). As an applicant for admission, binding Eighth Circuit precedent requires that Castaneda be detained under § 1225(b)(2). *Avila,* 170 F.4th at 1134-35.

True, as Castaneda notes, *Avila* did not address constitutional arguments like the ones he presses here. His constitutional—and Administrative Procedure Act—claims nevertheless fail for different reasons.

Consider first Castaneda's Fourth Amendment claim. He argues his arrest "was not supported by probable cause or reasonable suspicion"—in his view, he was "arrested simply for being present in Fremont, N[ebraska] when [Nebraska State Patrol] stopped him and held him for immigration authorities." (Filing No. 9 at 16).

Even if that were true, it would not entitle him to the relief he seeks. *See Romero v. Brown,* 2026 WL 1021455, at *3 (S.D. Iowa Apr. 15, 2026). His arguments relate solely to the initial traffic stop, not his ongoing detention, and "[a] Fourth Amendment violation at the moment of arrest provides scant justification for a subsequent release from custody or a bond hearing." *Id.* (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). Other principles further suggest a Fourth Amendment violation does not lead to release from immigration detention in circumstances like this. *See, e.g.,*

4

*INS v. Lopez Mendoza*, 468 U.S. 1032, 1040 (1984) (""[A]n illegal arrest has no bearing on a subsequent deportation proceeding."); *Lopez-Fernandez v. Holder*, 735 F.3d 1043, 1046 (8th Cir. 2013) ("The exclusionary rule generally does not apply in civil deportation proceedings when there is a Fourth Amendment violation standing alone.").

What is more, the cases Castaneda relies on are of no help to him. None resulted in the release of a petitioner based on a Fourth Amendment violation during the initial arrest. In fact, none of his cases feature any discussion of a Fourth Amendment claim at all. *See Juan C.R.R. v. Bondi*, Civil 26-01282 (D. Minn. Mar. 17, 2026) (granting relief on procedural due process grounds); *J.B.C.O. v. Attorney Gen.*, 26-1429, 26-639, 26-778 (D. Minn. Mar. 6, 2026) (granting relied on statutory grounds); *Francisco S. v. Attorney Gen.*, 26-cv-1455 (D. Minn. Feb. 20, 2026) (granting relief on statutory grounds); *Hussen v. Noem et al.,* 26-cv-324 (D. Minn Mar. 9, 2026) (non-habeas case denying motion for preliminary injunction).

In sum, Castaneda has failed to carry his burden of showing that he is *in custody* in violation of the Fourth Amendment. *See Munaf,* 553 U.S. at 693 ("Habeas is at its core a remedy for unlawful executive detention.").

Castaneda's procedural due process claims fare no better. There is no question the Fifth Amendment entitles him to due process of law in removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). But at the same time, the U.S. Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). In *Demore,* the Supreme Court reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. The reason, according to the Court, was that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. "In other words, the government has more flexibility when dealing with immigration." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024). And as an "applicant for admission," Castaneda "has only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 105 (2020).

In sum, Castaneda has no statutory right to a bond hearing given § 1225(b)(2)'s application to him. He "shall be detained" under § 1225(b)(2) and is not entitled to a bond hearing as a matter of procedural due process, either. *See Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018)

5

(characterizing § 1225(b)(2) as "mandat[ing] detention of applicants for admission until certain proceedings have concluded.").

In response, Castaneda invokes the three-part test from *Mathews v. Eldridge*, 424 U.S. 319 (1976) (Filing No. 9 at 9), but as the Court has previously explained, Eighth Circuit precedent precludes that argument. It is true that deciding what process is due ordinarily requires a form of interest balancing. But cases like *Demore* "leave no room for a multi-factor 'reasonableness' test" and "have already done whatever balancing is necessary" in the detention context. *Banyee,* 115 F.4th at 933. *See, e.g., Demore,* 538 U.S. at 528 (explaining that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"); *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (linking a reasonable time limitation for detention to "the likelihood of removal in the reasonably foreseeable future"). As the Eighth Circuit noted, "the lead *dissent* in *Demore* advocated for the type of 'individual determination' [Castaneda] now seeks, presumably under a *Mathews*-type inquiry." *Banyee,* 115 F.4th at 933 (emphasis in original). *Mathews* is therefore of no help to Castaneda.

Castaneda's substantive due process claim also fails. Because he has not received a bond hearing,[2] he argues, "[t]here is no question [he] has been deprived of his liberty." (Filing No. 2 at 16). At the outset, the Court notes that substantive and procedural due process are not exclusive concepts—"their protections often overlap." *Albright v. Oliver*, 510 U.S. 266, 301 (1994) (Stevens, J., dissenting). Cases like *Banyee* therefore "draw no explicit distinction between substantive and procedural due process." *Romero,* 2026 WL 1021455, at *6. Thus, Castaneda's substantive due process claim fails for many of the reasons the Court outlined above—i.e., "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Banyee,* 115 F.4th at 931 (citation modified) (quoting *Demore,* 538 U.S. at 526).

Castaneda's substantive due process claim is also deficient for other, independent reasons. To determine whether an asserted right or liberty is "fundamental" and thus warrants protection as

---

[2] As the Court discusses further below, Castaneda's conclusion that the immigration judge "refus[ed] to hold a bond redetermination hearing" lacks any factual support from the face of his petition. (Filing No. 9 at 16).

a substantive-due-process right under the Fifth Amendment, the Court (1) "insists on a 'careful description of the asserted fundamental liberty interest,'" and (2) "stresses that 'the Due Process Clause specially protects' only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). For Castaneda, that is a "heavy lift[.]" *Leiva v. Berg*, 2026 WL 948430, at *5 (D. Neb. Apr. 8, 2026); *see Munoz*, 602 U.S. at 911 ("[I]t would be remarkable to put the Government to the most demanding test in constitutional law in the field of immigration, an area unsuited to rigorous judicial oversight."). Castaneda cannot clear either hurdle.

*First*, he failed to "careful[ly] descr[ibe]" his asserted fundamental liberty interest. *Munoz*, 602 U.S. at 910. It is unclear what his asserted fundamental liberty interest is—his claim seems to be premised on the lack of a bond hearing under § 1226. But "[a]t bottom, that is a claim to a right of release into the country, without lawful admission, while removal proceedings are pending." *Romero*, 2026 WL 1021455, at *7. There is no such constitutional right. *See, e.g., Leiva*, 2026 WL 1021455, at *5; *Bushuev v. Immigr. & Customs Enf't - Enf't & Removal Operations*, 2026 WL 352873, at *3 (E.D. Mo. Feb. 9, 2026). *Second,* Castaneda makes no argument that his purported fundamental right—whatever it may be—is "deeply rooted in this Nation's history and tradition." *Munoz*, 602 U.S. at 911 (quoting *Glucksberg*, 521 U.S. at 721). His substantive due process claim therefore fails.

Finally, Castaneda's claim under the Administrative Procedure Act (APA) fails. He alleges the "[immigration judge's] decision" violated the APA in several ways. (Filing No. 9 at 17). Parroting the APA's text, he says "the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; was contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; and without observance of procedure required by law." (Filing No. 9 at 17); *see* 5 U.S.C. § 706(2)(A)-(D).

But there is a threshold problem with that argument: the Court has no way to evaluate it. His petition does not allege the immigration judge made *any* decision, much less set forth non-conclusory ways it was deficient. All his petition says is he "requested a bond redetermination hearing" before an immigration judge and he "has evidence" supporting his request for release on bond. (Filing No. 9 at 6). Those factual gaps are compounded by a lack of any distinct legal

7

argument. All Castaneda can muster in support of his APA claim is an "incorporat[ion] of his previous arguments and paragraphs." (Filing No. 9 at 17). That is not enough. He "failed to cite to any legal authority" in support of this conclusory argument and "it is not this court's job to research the law to support [his] argument." *Molasky v. Principal Mut. Life Ins. Co.,* 149 F.3d 881, 885 (8th Cir. 1998); *see, e.g., Leiva,* 2026 WL 948430, at *6. Thus, Castaneda has failed to show he is entitled to habeas relief based on a violation of the APA.

Accordingly,

**IT IS ORDERED:**

1.  Petitioner Jose Castaneda's amended petition for a writ of habeas corpus (Filing No. 9) is denied.

2.  A separate judgment will be entered.

Dated this 15th day of June, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

8